IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NETCHOICE,

*Plaintiff*,

v.

JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General & Reporter,

*Defendant*.

Case No. 3:24-cv-01191

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION TO ASCERTAIN STATUS

Though NetChoice is concerned that this Court didn't grant it a preliminary injunction on December 31, NetChoice shouldn't be surprised. It lobbied against the Act and knew that Tennessee passed it in May 2024. PI-Opp. (Doc. 26) at 21. Yet it waited five months before filing this lawsuit, suing in October and demanding relief only one day before the law's effective date. PI-Opp.21. That delay—as Tennessee argued in opposition and NetChoice never denied in reply—defeats NetChoice's claim to irreparable harm. *See* PI-Opp.21-22.

NetChoice's motion for an "update" proves that Tennessee was right about irreparable harm. Mot. (Doc. 42) at 3. NetChoice's lawyers have a duty to tell this Court if their members already spent the resources implementing the Act's age-verification, parental-consent, and parental-supervision provisions—thus mooting one of their main theories of irreparable harm. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.23 (1997) ("It is the duty of counsel to bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness" or "a change in circumstances bearing on the vitality of a case"). But NetChoice discusses only NextDoor, which apparently amended its terms of service to ban Tennessee minors from creating new accounts. *See* Mot.2-3. Even that action doesn't *comply* with the Act: It doesn't implement a process to "verify the age" of new account holders, §47-18-5703(a)(1). And if NextDoor plans to outright ban verified minors from creating accounts,

then NextDoor will *not* be spending resources to comply with the Act's parental-consent and parental-supervision provisions. As for NetChoice's other members, NetChoice is silent. It thus concedes what's become public: That these members have *not* come into compliance with Tennessee's law. *See, e.g.*, *Are Social Media Platforms Complying with Tennessee's New Age Verification Law?*, WKRN (Jan. 1, 2025 7:44pm), perma.cc/5GLN-7BQA. So its members are not facing the "loss of their First Amendment freedoms" from implementing the Act's reforms; they are not implementing them. Mot.2-3 (cleaned up). And its members are not facing "compliance costs" that can't be recovered due to "sovereign immunity"; they are not complying. Mot.2.\*

NetChoice is left with the supposed risk of "enforcement" by Tennessee's attorney general and "potentia[l]" civil "penalties," Mot.2—the kind of non-imminent risks that do not count as irreparable harm, *see MetroBanc v. Fed. Home Loan Bank Bd.*, 666 F. Supp. 981, 984-85 (E.D. Mich. 1987). NetChoice is right that "the Act is now in effect." Mot.1. And Defendant will not agree to "stay enforcement" of this valid statute passed by Tennessee's elected representatives. Mot.1. But any enforcement against NetChoice's members is speculative and remote. Enforcement would require a separate legal proceeding. *See* §47-18-5705 (incorporating §47-18-108); §47-18-108(a)(1), (4). That proceeding generally could not be filed until the entity got notice, an opportunity to respond, and a chance to resolve the issue. *See* §47-18-108(a)(2)-(3); §47-18-5002(2). And even if one of those proceedings is someday initiated, NetChoice's members could raise the same constitutional arguments as a defense in the "enforcement proceedings." *MetroBanc*, 666 F. Supp. at 985. The drastic remedy of a

---

\* NetChoice again raises "sovereign immunity" as the supposed reason why its costs could not be recovered via damages. Mot.2. But after Tennessee explained that NetChoice's members could have sought damages by suing officials in their personal capacities, PI-Opp.21, NetChoice shifted its argument to say that "*qualified* immunity" is what would stop it from getting damages, PI-Reply (Doc. 35) at 15 (emphasis added). NetChoice cites no case suggesting that the possibility of *qualified* immunity makes a monetary harm irreparable for purposes of a preliminary injunction. And NetChoice must think it can defeat qualified immunity, since it says the merits of its constitutional claims are "clear." PI-Reply 5.

2

Case 3:24-cv-01191    Document 43    Filed 01/03/25    Page 2 of 3 PageID #: 1856

preenforcement preliminary injunction or TRO here—especially *after* the Act has gone into force—is

not warranted.

Date: January 3, 2025                                Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

                                                                        /s/ *Cameron T. Norris*

Matthew D. Janssen, BPR No. 35451     Thomas R. McCarthy*
Brian Phelps, BPR No. 40705            Cameron T. Norris, BPR No. 33467
Sr. Assistant Attorneys General/        Thomas S. Vaseliou*
Managing Attorneys                       CONSOVOY MCCARTHY PLLC
OFFICE OF THE ATTORNEY GENERAL  1600 Wilson Blvd., Suite 700
CONSUMER PROTECTION DIVISION     Arlington, VA 22209
UBS Building, 20th Floor                    (703) 243-9423
315 Deaderick Street                        cam@consovoymccarthy.com
Nashville, TN 37243
(615) 741-1671                                Adam K. Mortara, BPR No. 40089
matthew.janssen@ag.tn.gov            LAWFAIR LLC
brian.phelps@ag.tn.gov                 40 Burton Hills Blvd., Ste. 200
                                              Nashville, TN 37215
                                              (773) 750-7154

**CERTIFICATE OF SERVICE**

On January 3, 2025, I e-filed this document with the Court, which automatically emailed everyone requiring notice.

                                                                                  /s/ *Cameron T. Norris*