# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NETCHOICE,<br><br>*Plaintiff*,<br><br>v.<br><br>JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General & Reporter,<br><br>*Defendant*. | Civil Action No. 3:24-cv-01191 |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY

The Northern District of Florida's decision in *CCIA & NetChoice v. Uthmeier*, No. 4:24-cv-438 (N.D. Fla.) ("Slip Op."), has no bearing here, where NetChoice's associational standing to raise claims on behalf of its members is clear. To the contrary, Defendant concedes that NetChoice has associational standing by identifying some NetChoice members as regulated by Tennessee House Bill 1891. *See* ECF 43 at 2; ECF 54 at 3.

Defendant fails to discuss the basis for *Uthmeier*'s conclusion, which turned on a unique numerical coverage threshold for that specific Florida law—which is absent from the Tennessee law challenged in the instant lawsuit. *Uthmeier* ruled that the plaintiffs there failed to provide evidence that any plaintiff member website met the Florida statutory coverage requirement "that ten percent or more of the [regulated online] platform's users who are under 16 spend, on average, *two hours or more* on the platform on the days when using it." Slip Op. 6 (emphasis added). *Uthmeier* found that the record lacked evidence "tending to show that any one specific member likely meets *the time requirement for coverage* under the law." *Id.* at 9 (emphasis added).

The Tennessee law challenged here, in stark contrast, has no time requirement for coverage. This Tennessee law regulates any "website or internet application that": "(i) [a]llows a person to create an account; and (ii) [e]nables an account holder to communicate with other account holders and users through posts." Tenn. Code § 47-18-5702(9)(A). *Uthmeier*'s holding therefore has no bearing on this case.

In all events, there is no dispute that at least some of NetChoice's members are regulated by Tennessee House Bill 1891, and thus that NetChoice has associational standing in this lawsuit. NetChoice has identified members covered by the Act in both its complaint and preliminary injunction motion. *See* ECF 1 ¶ 16; ECF 9 at 3, 9. Unlike *Uthmeier*, here Defendant does not—and has never—argued that there is insufficient evidence to determine whether some NetChoice members are regulated by Tennessee House Bill 1891. To the contrary, Defendant concedes that some NetChoice members are covered by this law. *See* ECF 43 at 2; ECF 54 at 3.

*Uthmeier* thus has no bearing on the standing arguments Defendant has raised in this lawsuit. Defendant has argued that NetChoice lacks standing (1) because Defendant disputes that the Act imposes *First Amendment injuries* on NetChoice members; and (2) to raise the rights of members' *users*. ECF 26 at 5-9. Neither of these arguments assert a lack of evidence to determine whether at least some NetChoice members are covered by this law. And neither of these arguments disputes that NetChoice member websites "are 'direct objects of the' Act" and regulated by this law. ECF 35 at 1 n.1 (quoting *Carman v. Yellen*, 112 F.4th 386, 408 (6th Cir. 2024)). That alone is enough to demonstrate that NetChoice members would have standing to challenge the Act. Regardless, Defendant's standing arguments are also incorrect on their own terms, as NetChoice has explained. *See id.* at 1-3.

2

In addition to the fact that NetChoice members are the "object" of the Act's regulation, NetChoice has explained on numerous occasions why its members are irreparably injured, and continue to be injured, by the Act. *See* ECF 9 at 24-25; ECF 35 at 15; ECF 42 at 2-3; ECF 45 at 1-3; ECF 48 at 3-4; ECF 49 at 24-25; ECF 55 at 1-3. If *Uthmeier* is relevant at all, it supports the existence of those injuries. The Court there noted that in that case Plaintiffs asserted "two theories of injury in fact"—(1) "at least one of their members . . . operates a platform that is likely to be covered by Florida's law, and the member company will have to expend money and resources to come into compliance with the law"; and (2) "the law injures the First Amendment rights of at least one of its members because it restricts the member's ability to disseminate both their own and third-party speech to their users." Slip Op. at 5-6. The Court correctly noted that "[e]ither type of injury would satisfy the injury-in-fact requirement of the standing test." *Id.*

Finally, Defendant incorrectly asserts that "NetChoice members must now comply with a Florida law that imposes age-verification and parental-consent requirements that parallel Tennessee's." ECF 62 at 2. For one, the legal challenge to the Florida law is not over. The court has dismissed the complaint in *Uthmeier* without prejudice, permitting the plaintiffs to file an amended complaint. Moreover, Florida's law differs in material respects from Tennessee's. For example, Tennessee House Bill 1891's speech restrictions apply to minors under 18, Tenn. Code § 47-18-5702(4), while the Florida law applies to minors under 16, Slip Op. at 1. And, importantly, Florida's law applies only to accounts owned by minors residing in Florida. Fla. Stat. § 501.1736(1)(a), (d). Thus, if NetChoice members must comply with Florida's law, those compliance costs and compliance mechanisms will not ensure compliance in Tennessee. Accordingly, compliance with Tennessee's law will require additional, unrecoverable investments.

For these reasons, NetChoice respectfully asks that this Court grant its Motion for Preliminary Injunction, ECF 8, and enjoin Defendant from enforcing Tennessee House Bill 1891 against NetChoice's members.

Dated: March 18, 2025

Respectfully submitted,

*/s/ Steven P. Lehotsky*

| | |
|---|---|
| Junaid Odubeko (Bar No. 023809)<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1221 Broadway Suite 2400<br>Nashville, TN 37203<br>(615) 244-2582<br>jodubeko@bradley.com | Steven P. Lehotsky*<br>Scott A. Keller*<br>Jeremy Evan Maltz*<br>LEHOTSKY KELLER COHN LLP<br>200 Massachusetts Avenue, NW, Suite 700<br>Washington, DC 20001<br>(512) 693-8350<br>steve@lkcfirm.com<br>scott@lkcfirm.com<br>jeremy@lkcfirm.com<br><br>Jared B. Magnuson*<br>LEHOTSKY KELLER COHN LLP<br>3280 Peachtree Road NE<br>Atlanta, GA 30305<br>(512) 693-8350<br>jared@lkcfirm.com<br><br>Joshua P. Morrow*<br>LEHOTSKY KELLER COHN LLP<br>408 W. 11th Street, 5th Floor<br>Austin, TX 78701<br>(512) 693-8350<br>josh@lkcfirm.com<br>**\*admitted** *pro hac vice* |

*Attorneys for Plaintiff NetChoice*

**Certificate of Service**

I, Jeremy Evan Maltz, certify that on March 18, 2025, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Jeremy Evan Maltz*
Jeremy Evan Maltz
