# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NETCHOICE,<br><br>*Plaintiff,*<br><br>v.<br><br>JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General & Reporter,<br><br>*Defendant.* | Civil Action No. 3:24-cv-01191 |

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

The Western District of Arkansas has permanently enjoined enforcement of Arkansas's age-verification and parental-consent law for minors to access social media websites. *See* ECF 77, *NetChoice, LLC v. Griffin*, No. 5:23-cv-05105 (W.D. Ark. Mar. 31, 2025) ("*Griffin* Order."). NetChoice cited *Griffin*'s earlier decision preliminarily enjoining Arkansas's law. *E.g.*, ECF 9 at 1-2, 9, 12, 14-15, 20-24; ECF 35 at 2, 4-5, 7-8, 13-14. Accordingly, *Griffin*'s final summary judgment decision lends support to multiple NetChoice arguments in this case.

*First*, in challenging age-verification and parental-consent laws, "NetChoice has associational standing to assert claims based on the harms to be suffered by its member and third-party standing to assert the rights of its members' users." *Griffin* Order at 16. That applies with equal force here. *See* ECF 9 at 9; ECF 35 at 1-5.

*Second*, age-verification and parental-consent requirements burden the exercise of First Amendment rights because, *e.g.*, (1) governmental parental-consent requirements "foreclose[] access to social media for those minors whose parents do not consent to the minor's use of social media"; and (2) age-verification requirements "burden[] social media access for all [users]—both adults and minors whose parents would allow them to use social media." *Griffin* Order at 20. This

a direct refutation of Defendant's argument here that such requirements do not implicate the First Amendment at all. *See* ECF 35 at 7-9 (addressing Defendant's argument).

*Third*, whenever a law's coverage requirements are "determined by the content of the post resting inside that company or platform," the regulation "is content based." *Griffin* Order at 22 (cleaned up) (quoting *City of Cincinnati v. Discovery Network*, 507 U.S. 410, 429 (1993)). Much like the Arkansas law in *Griffin*, a "website operating in [Tennessee], an enforcement official, a court, or a jury applying the Act, cannot determine whether the website is regulated without looking to the content posted on that website." *Id.* at 22-23; *see* ECF 9 at 15-18; ECF 35 at 10-11.

*Fourth*, once a "Court" concludes a law "is a content-based restriction, the State bears the burden of showing the Act meets strict scrutiny." *Griffin* Order at 33. The same is true here. *See* ECF 9 at 17-18; ECF 35 at 10-11.

*Fifth*, age-verification and parental-consent requirements to access social media websites are "not narrowly tailored to address the harms that the State has a compelling interest in preventing." *Griffin* Order at 26. Among many other reasons, *e.g.*, *id.* at 26-33, "imposition of an age-verification requirement for account creation is maximally burdensome," *id.* at 30. "It not only hinders adults' ability to speak and receive protected speech online, it excludes minors whose parents do not consent (or cannot prove their consent) from the vast democratic forums of the Internet. Minors, who cannot vote for the lawmakers that represent them, can use social media to make their voices heard on issues that affect them, like school shootings and school choice." *Id.* at 30-31 (cleaned up). Moreover, "NetChoice points to myriad avenues for parents to control their children's social media use." *Id.* at 32. Here too, the Tennessee Act fails strict scrutiny. *See* ECF 9 at 18-23; ECF 35 at 11-14.

*Sixth*, "[b]y barring access to all content on regulated platforms, including that which is neither unprotected nor harmful, based on the content and speakers represented on those platforms, the Act is

unconstitutional in all conceivable applications." *Griffin* Order at 33-34. Here too, Tennessee's Act is facially unconstitutional under the First Amendment. ECF 9 at 9-10; ECF 35 at 6-7.

*Finally*, terms like "primary purpose," "substantial function," and "predominant or exclusive function" in central coverage definitions are unconstitutionally vague. *Griffin* Order at 37-38. Tennessee uses similarly vague terms in its central "social media company" coverage definition, such as identifying websites' "primar[y]," "incidental," "predominant[ ]," or "general[ ]" functions. Tenn. Code § 47-18-5702(9)(B)(iii)(a)-(b), (iv)-(v), (vii)-(viii); *see* ECF 9 at 23-24; ECF 35 at 14-15.

Accordingly, NetChoice respectfully requests that this Court grant NetChoice's motion for preliminary injunction.

| Dated: April 1, 2025 | Respectfully submitted, |
|---|---|
| | /s/ Steven P. Lehotsky |
| Junaid Odubeko (Bar No. 023809) | Steven P. Lehotsky* |
| BRADLEY ARANT BOULT CUMMINGS LLP | Scott A. Keller* |
| 1221 Broadway Suite 2400 | Jeremy Evan Maltz* |
| Nashville, TN 37203 | LEHOTSKY KELLER COHN LLP |
| (615) 244-2582 | 200 Massachusetts Avenue, NW, Suite 700 |
| jodubeko@bradley.com | Washington, DC 20001 |
| | (512) 693-8350 |
| | steve@lkcfirm.com |
| | scott@lkcfirm.com |
| | jeremy@lkcfirm.com |
| | |
| | Jared B. Magnuson* |
| | LEHOTSKY KELLER COHN LLP |
| | 3280 Peachtree Road NE |
| | Atlanta, GA 30305 |
| | (512) 693-8350 |
| | jared@lkcfirm.com |
| | |
| | Joshua P. Morrow* |
| | LEHOTSKY KELLER COHN LLP |
| | 408 W. 11th Street, 5th Floor |
| | Austin, TX 78701 |
| | (512) 693-8350 |
| | josh@lkcfirm.com |
| | *admitted *pro hac vice* |

*Attorneys for Plaintiff NetChoice*

## Certificate of Service

I, Jeremy Evan Maltz, certify that on April 1, 2025, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Jeremy Evan Maltz*
Jeremy Evan Maltz