UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NETCHOICE,<br><br>*Plaintiff,*<br><br>v.<br><br>JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General & Reporter,<br><br>*Defendant.* | Civil Action No. 3:24-cv-01191 |

# PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

The Southern District of Ohio has permanently enjoined enforcement of Ohio's parental-consent law for minors younger than 16 to create accounts on social media websites. *See* ECF 56, *NetChoice, LLC v. Yost*, No. 2:24-cv-00047 (S.D. Ohio Apr. 16, 2025) ("*Yost* Op."). NetChoice cited *Yost*'s earlier decision preliminarily enjoining Ohio's law. *E.g.*, ECF 9 at 1-2, 9, 13-14, 16, 19-20, 22; ECF 35 at 1-2, 4-5, 9, 13. Accordingly, *Yost*'s final summary judgment decision lends support to multiple NetChoice arguments in this case.

*First*, in challenging parental-consent laws, "NetChoice has standing to assert its members' rights and the rights . . . minors." *Yost* Op.27. That applies with equal force here. *See* ECF 9 at 9; ECF 35 at 1-5. *Yost* provides a detailed analysis of why NetChoice has standing to raise the rights of its members' users, *Yost* Op.19-27, contrary to Defendant's argument in this case, *see* ECF 26 at 9.

*Second*, "in every application to a covered website, the Act raises the same First Amendment issues," in that "covered websites that provide the 'socially interactive' features outlined in the Act . . . are all under the same statutory obligation to block access to . . . minors absent parental

consent." *Yost* Op.28-29. Here too, Tennessee's Act is facially unconstitutional under the First Amendment. ECF 9 at 9-10; ECF 35 at 6-7.

*Third*, parental-consent requirements burden the exercise of First Amendment rights because they regulate (1) websites' "ability to publish and distribute speech *to minors* and speech *by minors*"; and (2) "minors' ability both to *produce speech* and *receive speech*." *Yost* Op.30. In so holding, the *Yost* court directly refuted Defendant's argument here that such requirements do not implicate the First Amendment at all. *See* ECF 35 at 7-9.

*Fourth*, when a law's central coverage definition treats websites differently based on "their means of disseminating speech and facilitating users' speech," such a distinction is content-based because "covered websites' choices about whether and how to disseminate user-generated expression 'convey a message about the type of community the platform seeks to foster.'" *Yost* Op.38-39 (citation omitted). Moreover, when *exceptions* to a coverage definition result in "[t]he State . . . favoring engagement with certain topics, to the exclusion of others," that too makes a law content-based. *Yost* Op.39. Like the Ohio law in *Yost*, the Act here is content-based. ECF 9 at 15-16; ECF 35 at 10-11.

*Fifth*, under the Supreme Court's decision in *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), "laws that require parental consent for children to access constitutionally protected, non-obscene content are subject to strict scrutiny." *Yost* Op.41; *id.* ("The Act *sub judice* mirrors the requirements considered in *Brown*."). This is an additional reason why the Act here is subject to strict scrutiny. *E.g.*, ECF 9 at 13.

*Sixth*, parental-consent requirements to access social media websites fail strict scrutiny where the State fails to show "the required nexus between the legislative concerns about the well-being of minors and the restrictions on speech." *Yost* Op.45. Like the Ohio law, the Act here "is

either underinclusive or overinclusive, or both, for all the purported government interests at stake." *Yost* Op.45; ECF 9 at 18-23; ECF 35 at 11-14. Analogously, the State's "response to a societal worry that children might be harmed if they are allowed to access adult-only sections cannot be to ban children from the library altogether absent a permission slip." *Yost* Op.45.

*Seventh*, terms like "primary purpose," in central coverage definitions are unconstitutionally vague. *Yost* Op.46. Tennessee uses similarly vague terms in its central "social media company" coverage definition, such as identifying websites' "primar[y]," "incidental," "predominant[]," or "general[]" functions. Tenn. Code § 47-18-5702(9)(B)(iii)(a)-(b), (iv)-(v), (vii)-(viii); *see* ECF 9 at 23-24; ECF 35 at 14-15.

*Finally*, "loss of First Amendment freedoms," and "unrecoverable compliance costs . . . constitute sufficient irreparable injury" to justify injunctive relief. *Yost* Op.47-48 (citation omitted). NetChoice's members have experienced, and continue to experience, the same irreparable injuries here. *E.g.*, ECF 9 at 24-25; ECF 35 at 15; ECF 42; ECF 45; ECF 48; ECF 55.

Accordingly, NetChoice respectfully requests that this Court grant NetChoice's motion for preliminary injunction.

3

Case 3:24-cv-01191    Document 68    Filed 04/17/25    Page 3 of 5 PageID #: 2149

Dated: April 17, 2025

Junaid Odubeko (Bar No. 023809)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway Suite 2400
Nashville, TN 37203
(615) 244-2582
jodubeko@bradley.com

Respectfully submitted,

/s/ Jeremy Evan Maltz
Steven P. Lehotsky*
Scott A. Keller*
Jeremy Evan Maltz*
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW, Suite 700
Washington, DC 20001
(512) 693-8350
steve@lkcfirm.com
scott@lkcfirm.com
jeremy@lkcfirm.com

Jared B. Magnuson*
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305
(512) 693-8350
jared@lkcfirm.com

Joshua P. Morrow*
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
(512) 693-8350
josh@lkcfirm.com
***admitted** pro hac vice*

*Attorneys for Plaintiff NetChoice*

## Certificate of Service

I, Jeremy Evan Maltz, certify that on April 17, 2025, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Jeremy Evan Maltz*
Jeremy Evan Maltz
