IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NETCHOICE,<br><br>*Plaintiff*,<br><br>v.<br><br>JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General & Reporter,<br><br>*Defendant*. | Case No. 3:24-cv-01191<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

# MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

Introduction ..................................................................................................................................... 1
Background ..................................................................................................................................... 3
Argument ........................................................................................................................................ 4
    I.    NetChoice lacks standing to challenge the Act as applied to its members. .......................... 5
    II.   NetChoice's vagueness challenge fails to state a claim and is unripe. .................................. 11
Conclusion .................................................................................................................................... 15

**INTRODUCTION**

NetChoice lost a case at the Supreme Court because, "[e]ven in the First Amendment context, facial challenges are disfavored." *Moody v. NetChoice*, 603 U.S. 707, 744 (2024). "NetChoice chose to litigate th[o]se cases as facial challenges," *Moody* explained, but then "treated th[o]se cases more like as-applied claims" by focusing on how the laws applied to "Faceboo[k]" and "YouTub[e]." *Id.* at 723-24. Because facial challenges require a holistic look at "how a law works in all of its applications," NetChoice's focus on only some applications was insufficient. *Id.* at 744.

In the aftermath of *Moody*, NetChoice started adding "as-applied" challenges to its complaints, *e.g.*, *NetChoice v. Bonta*, Doc.100, No. 5:22-cv-8861 (N.D. Cal. Nov. 1, 2024); *NetChoice v. Uthmeier*, Doc.171, No. 4:21-cv-220 (N.D. Fla. Nov. 1, 2024)—including its complaint here, Am.-Compl. (Doc.88) ¶75; Compl. (Doc.1) ¶58. But NetChoice, a group of giant tech corporations with armies of smart lawyers, did not limit itself to a facial challenge in *Moody* out of the goodness of its heart; it tried, after all, to litigate those cases like as-applied challenges. NetChoice formally limited itself to a facial challenge because, under basic principles of associational standing, it *had to*.

As those who litigate associational cases know, associations generally lack standing to bring their members' as-applied claims. The third requirement for associational standing is that "'neither the claim asserted nor the relief requested requires the participation of individual members.'" *AAPS v. FDA*, 13 F.4th 531, 537 (6th Cir. 2021). As-applied claims usually require that participation because they turn on the individual circumstances of each member. The resulting individualized proceedings defeat the "'administrative convenience and efficiency'" that associational standing must confer before courts will allow this departure from normal standing rules. *Free Speech Coal. v. Att'y Gen.*, 974 F.3d 408, 421 (3d Cir. 2020). So the "choice" in *Moody* was not between NetChoice bringing facial challenges and *NetChoice* bringing as-applied challenges; it was between NetChoice bringing facial challenges and one or more of "NetChoice's *members*" bringing as-applied challenges in their own individual cases.

*Moody*, 603 U.S. at 745 (Barrett, J., concurring) (emphasis added). No shrinking violets, NetChoice's members are fully capable of challenging state laws on their own. *E.g.*, *X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024).

This Court should dismiss the amended complaint to the extent that NetChoice brings as-applied claims. The Third Circuit correctly held that a membership association could not bring as-applied challenges to age-verification requirements in *Free Speech Coal.*, 974 F.3d at 422. A few courts have recently approved NetChoice's new strategy of adding as-applied claims, albeit in cases where the issue was not decisive because the courts granted preliminary injunctions after finding that the laws were facially unconstitutional. *See CCIA v. Uthmeier*, 2025 WL 1570007, at *9, *15 (N.D. Fla. June 3); *CCIA v. Paxton*, 747 F. Supp. 3d 1011, 1031, 1044 (W.D. Tex. 2024). But consistent with the Third Circuit, at least one court has rightly told NetChoice that it lacks standing to bring as-applied claims. *E.g.*, *NetChoice v. Bonta*, 761 F. Supp. 3d 1202, 1230-31 (N.D. Cal. 2024). And this Court sits in the Sixth Circuit, whose precedents demand perhaps the strictest adherence to the limits on associational standing. *See, e.g.*, *Dayton Area Chamber of Com. v. Kennedy*, 2025 WL 2237556, *4-6 (6th Cir. Aug. 6); *AAPS*, 13 F.4th at 541.

Separately, this Court should dismiss NetChoice's vagueness challenges for failure to state a claim. The Act's definition of a "social media company" is not vague. NetChoice confidently identifies many platforms that are regulated. The terms it claims are ambiguous are sufficiently ascertainable, as many courts have held in these cases. And their meaning is even clearer in context: They describe a "social media company," a term that's readily identifiable in everyday usage.

For these reasons, this Court should streamline this litigation by dismissing NetChoice's as-applied claims under the Free Speech Clause and all its claims under the Due Process Clause.

## BACKGROUND

On May 2, 2024, Tennessee enacted the Protecting Children from Social Media Act. The Act covers "[s]ocial media platform[s]," defined as "a website or internet application" that "[a]llows a person to create an account" and "[e]nables an account holder to communicate with other account holders and users through posts." T.C.A. §47-18-5702(9)(A); *see* §5702(7), (2) (defining "[p]ost" and "[c]ontent"). The Act gives examples that don't meet this definition, like "interactive gaming" and "educational entertainment." §5702(2); *see* §5702(9)(B). And it excludes platforms that "primarily provid[e] career development opportunities" and those that "consis[t] primarily of content that is not generated by account holders." §5702(9)(B)(iii), (v). It also exempts a website for which the "interactive functionality is incidental to … the preselected content," one "in which interaction between users is predominately used for technical support," or one where "the interaction with other users or account holders is generally limited to the ability to send, receive, or request funds." §5702(9)(B)(iii), (vii), (viii). The Act regulates the creation of accounts: Many social-media platforms let non-accountholders visit and see their websites, *see* Doc.9 at 4, and the Act does not require platforms to do anything regarding those users, T.C.A. §47-18-5702(10).

In substance, the Act requires three main things: age verification, parental consent, and parental supervision. A social-media company must "verify the age of an individual" who wants to open an account (age-verification provision, §5703(a)). If the individual is reasonably believed to be under 18, §5702(4), then the company must get parental consent before letting him open an account (parental-consent provision, §5703(a)(2)-(3)). The company must let a parent "revoke consent," §5703(b), but it need not otherwise "reverify" age or parental consent, §5703(a)(3). The company also cannot "retain personally identifying information that was used to verify age or parental consent." §5703(c). And finally, social-media companies must provide parents with the ability to supervise, modify, or revoke their child's account (parental-supervision provision, §5704).

3

NetChoice, a trade association whose members run major online platforms, brings facial and as-applied challenges to Tennessee's law under the First and Fourteenth Amendments, arguing that the Act chills speech and is void for vagueness. In its amended complaint, NetChoice identifies particular members and platforms that it claims the Act unconstitutionally regulates: "(1) Automattic, which owns and operates Tumblr; (2) Discord; (3) Dreamwidth; (4) Meta, which owns and operates Facebook, Instagram and Threads; (5) Nextdoor; (6) Pinterest; (7) Reddit; (8) Snap Inc., which owns and operates Snapchat; (9) X; and (10) YouTube." Am.-Compl. ¶16. Among its requested remedies, NetChoice seeks declaratory judgments that several provisions of the Act violate the First Amendment "as applied to NetChoice's regulated members' services." *Id.* at 33.

Following this Court's denial of NetChoice's preliminary-injunction motion, the parties proposed competing deadlines for fact discovery, with Tennessee requesting 12 more months than NetChoice in large part because NetChoice brings as-applied claims. Doc.86 at 2-8. After a teleconference, Magistrate Judge Newbern ordered the parties to submit supplemental statements. Doc.87. Those statements have been submitted, and the length of fact discovery has not yet been resolved.

**ARGUMENT**

Rule 12(b)(1) lets a party move to dismiss "a claim for relief in any pleading" on the grounds that the Court lacks "subject-matter jurisdiction" over that claim. "Where a challenge is made to a party's constitutional or prudential standing, the motion is properly brought under Rule 12(b)(1)." *Smith v. FHFA*, 2013 WL 12121335, at *2 (E.D. Tenn. Sept. 24). "The plaintiff bears the burden of proof that it meets the required elements of standing." *Retired Chicago Police Ass'n v. Chicago*, 76 F.3d 856, 865 (7th Cir. 1996); *accord Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1137 (10th Cir. 2006) ("The burden to establish prudential standing is on the plaintiff.").

Rule 12(b)(6) allows a party to seek dismissal for "failure to state a claim." To "survive a motion to dismiss," the complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. DCS*, 510 F.3d 631, 634 (6th Cir. 2007).

This Court should dismiss the amended complaint to the extent that NetChoice brings as-applied challenges (because NetChoice lacks associational standing) and asserts a vagueness claim (because it's unripe and fails to state a claim). These questions can be resolved as a matter of law now. And resolving them now could streamline the rest of this litigation, especially given the parties' dispute about the scope and length of discovery.

I.  **NetChoice lacks standing to challenge the Act as applied to its members.**

NetChoice does not have its *own* standing or claim. It does not allege that Tennessee's law injures it as an organization. And the Act does not regulate NetChoice because that trade association runs no social-media platform. Am.-Compl. ¶¶13-16.

NetChoice thus needs to satisfy the test for associational standing. It can rely on the standing and claims of its members only if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Though *Hunt*'s third prong is prudential, it is still required. *Free Speech Coal.*, 974 F.3d at 421. And NetChoice must satisfy it for "each" claim, remedy, and part of the Act that it challenges. *Davis v. Colerain Township*, 51 F.4th 164, 171 (6th Cir. 2022).

NetChoice purports to challenge Tennessee's law not just on its face, but also as applied to some of its members. NetChoice has at least 40 members overall, including many companies that do not run social-media websites. Am.-Compl. ¶13 & n.2; *see About Us: Association Members*, NetChoice,

5

perma.cc/3REE-BBHR (archived Aug. 24, 2025). So NetChoice challenges Tennessee's law "to the extent it regulates 'social media' websites, including as applied to Plaintiffs' members' regulated services," and then identifies ten specific members and twelve specific websites. Am.-Compl. ¶76, ¶16. In terms of relief, NetChoice seeks "an injunction" that blocks the law's enforcement "against Plaintiff and its members." ¶145. And it seeks declaratory judgments that the Act's provisions are unconstitutional "as applied to NetChoice's regulated members' services." *Id.* at 33. Though NetChoice challenges Tennessee's law under both the First Amendment and the void-for-vagueness doctrine, it appears to raise as-applied challenges only under the First Amendment. *See id.* (seeking a declaratory judgment that the Act "violates the First Amendment … as applied"). For its vagueness challenge, NetChoice argues only that "a *facial* vagueness challenge is proper." ¶78 (emphasis added).

The problem for NetChoice is that as-applied challenges usually violate the third requirement from *Hunt*—that "'neither the claim asserted nor the relief requested requires the participation of individual members.'" *Harris v. McRae*, 448 U.S. 297, 321 (1980). That rule applies to all kinds of constitutional challenges. *See, e.g., id.* (no as-applied free-exercise claim); *N.Y.S. NOW v. Pataki*, 261 F.3d 156, 171-72 nn.4-5 (2d Cir. 2001) (no as-applied due-process claim); *Rent Stabilization Ass'n of N.Y.C. v. Dinkins*, 5 F.3d 591, 598 (2d Cir. 1993) (no as-applied takings claim); *Ass'n of Christian Schs. Int'l v. Stearns*, 362 F. App'x 640, 644 (9th Cir. 2010) (no as-applied free speech or free exercise claims); *Minor I Doe v. Sch. Bd. for Santa Rosa Cnty.*, 264 F.R.D. 670, 688 (N.D. Fla. 2010) (no as-applied free-speech claim).

As-applied challenges usually violate the "claim asserted" part of *Hunt*'s third prong. These claims contend that a law's "'application to a particular person under particular circumstances'" violates the Constitution. *Free Speech Coal.*, 974 F.3d at 422. So they "require an individualized inquiry for each association member." *Id.*

6

Independently, as-applied challenges usually violate the "relief requested" part of *Hunt*'s third prong. Under the logic of associational standing, courts award a declaration or injunction *to the association* and that relief is then "shared by all [members] in equal degree." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). But a successful as-applied challenge justifies relief only for the plaintiff who proved the as-applied claim. *E.g.*, *Thomas v. Bright*, 937 F.3d 721, 727 (6th Cir. 2019), *abrogated on other grounds by Austin v. Reagan Nat'l Advert. of Austin*, 596 U.S. 61 (2022); *see Moody*, 603 U.S. at 758 (Thomas, J., concurring) ("Assuming a court adheres to traditional remedial limits, a successful as-applied challenge only prevents application of the statute against that plaintiff."). Especially after *Trump v. CASA*, injunctions cannot be "broader than necessary" by covering nonparties or plaintiffs who lack their own standing and meritorious claim. 145 S.Ct. 2540, 2562-63 (2025). An injunction that runs to the association is, by definition, overbroad when the association wins only an as-applied claim. The relief would protect the association (which lacks an as-applied claim itself) and all its members (even those who lack standing or who have no valid as-applied claim). Courts cannot use "associational standing" as a "'backdoor' way to grant a universal injunction." *AAPS*, 13 F.4th at 541. And even if an association could get an injunction that protects only some of its nonparty members, that kind of individualized relief lacks the efficiencies of associational standing and thus violates *Hunt*'s third, prudential prong. *See Ass'n of Christian Schs. Int'l v. Stearns*, 678 F. Supp. 2d 980, 985 (C.D. Cal. 2008), *aff'd*, 362 F. App'x at 644.

Consider two on-point cases. In *Free Speech Coalition*, two trade associations brought as-applied First Amendment claims challenging a federal statute requiring age verification and recordkeeping for pornographers. 974 F.3d at 413-14, 416 & n.3. The Third Circuit held that the trade associations lacked associational standing to bring as-applied claims because they failed *Hunt*'s individual-participation requirement. *Id.* at 420-21. Specifically, the trade associations' "as-applied claims required their members' individual participation" because, under intermediate scrutiny, "the narrow tailoring inquiry

7

raised 'whether the Statutes and regulations are sufficiently circumscribed' as applied to the 'specific conduct' of each member." *Id.* at 421. Like NetChoice here, the trade associations there "attempt[ed] to escape that standing defect by converting their as-applied claims on behalf of their members into a collective one on behalf of the 'entire adult film industry.'" *Id.* But that dodge was unavailing: "'Generalized statements regarding the adult film industry's speech' could not 'replace the individualized inquiry required'" by an as-applied claim. *Id.* Even applying strict scrutiny, the trade associations lacked standing to bring as-applied claims, since "[s]trict scrutiny does not change the individualized inquiry required for an as-applied claim." *Id.* at 422. "'[F]acts matter, and what may be narrowly drawn and the least restrictive means' for one association member 'will not necessarily be so' for another." *Id.*

In *NetChoice v. Bonta*, a court held that NetChoice lacked standing to bring as-applied claims against a California social-media law. 761 F. Supp. 3d at 1230-31. That law regulated social-media websites' personalized feeds, and NetChoice challenged it under the First Amendment both facially and as-applied to specific members. *Id.* at 1210. The court correctly observed that "each separate as-applied challenge on behalf of each separate NetChoice member requires its own 'ad hoc factual inquiry.'" *Id.* at 1230. Because NetChoice's as-applied claims "require deep factual inquiries into how a particular social media feed works," the court ruled that NetChoice lacked standing to bring those claims and thus denied a preliminary injunction as to the association's as-applied First Amendment claims. *Id.*

Same here. NetChoice claims that Tennessee's law is subject to heightened scrutiny. Am.-Compl. ¶¶10, 83-85. Under that theory, NetChoice's as-applied challenges will require the Court to weigh the burden on speech for each website against Tennessee's governmental interests, including the strength of those interests for each website and whether those interests justify the burden on each website. *Free Speech Coal.*, 974 F.3d at 421; *see Singer v. United States*, 38 F.3d 1216, *5 (6th Cir. 1994)

8

Case 3:24-cv-01191    Document 91    Filed 08/26/25    Page 10 of 18 PageID #: 2515

("An 'as applied' challenge requires a court to determine on a case-by-case analysis, whether the regulation as applied to the facts of the case abridges the First Amendment."). The burden question requires a "fact intensive" look into whether and how the Act affects speech on that website—a question that will "vary" from "platform to platform." *Moody*, 603 U.S. at 747 (Barrett, J., concurring). NetChoice's members, after all, represent "many different facets" of the social-media landscape and have platforms that present a "diversity of circumstances." *Free Speech Coal.*, 974 F.3d at 422. NetChoice's complaint offers significant platform-specific detail about each website. Am.-Compl. ¶¶40-44. And its declarations claim that two of its members are different from other social-media platforms. *E.g.*, Doc.8-3 ¶¶5-21; Doc.8-4 ¶¶5-10. Platform-specific differences will also affect the strength of Tennessee's governmental interests, including whether the Act's provisions "burden substantially more speech than necessary to further those interests." *Free Speech Coal. v. Paxton*, 145 S.Ct. 2291, 2317 (2025). The Act imposes different burdens for each website. Each website could adopt different measures to comply with the Act. Each website has different measures that it's already adopted, with various degrees of adequacy. And each website differs in how it attracts and addicts children and how it endangers children—such as the prevalence of child predators and obscene material, the measures taken to mitigate these harms, and the adequacy of those measures.

Though NetChoice does not appear to bring as-applied *vagueness* claims, it would lack standing to bring those claims for the same reasons. As-applied vagueness claims would "involve a factual dimension" because they require the plaintiff to prove that the statute is "vague as applied to particular parties in particular circumstances." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1234 (10th Cir. 2023). In other words, NetChoice must prove that the Act's definition of a "social media platform" is vague as applied to the characteristics of each member's platform. And NetChoice will argue that vagueness principles apply differently here because the Act regulates speech, roping in the individualized considerations that go into its First Amendment claim. *E.g.*, Am.-Compl. ¶88. Associations lack standing to

9

bring such "as-applied vagueness and First Amendment challenges" because they "require consideration of the particular circumstances" and "must be tethered to the factual context" of each website. *Progeny v. City of Wichita*, 2022 WL 93406, at *9-10 (D. Kan. Jan. 10) (dismissing association's as-applied claim); *see id.*, 2024 WL 359345, at *9 (D. Kan. Jan. 30) (same).

That this case will require NetChoice's members to participate is not hypothetical. *Hunt*'s third prong exists in part because, when claims turn on the individual circumstances of members, the "association lacks 'detailed records'" needed to prove its absent members' claims. *Free Speech Coal.*, 974 F.3d at 421. And here, NetChoice has no documents or facts about its members' individual websites. *See Bonta*, 761 F. Supp. 3d at 1230-31. As NetChoice recently told this Court, its cases challenging other state laws have required "third-party subpoena[s]" of its members. Doc.90 at 1, 7. The discovery in those cases has involved depositions of "Meta, Snap Inc., and Nextdoor," among others. Doc.90 at 4. Tennessee likewise plans to subpoena NetChoice's individual members—members who are large, well-lawyered corporations that can resist those subpoenas in their home courts, requiring Tennessee to litigate motions to quash either here or even in *other* jurisdictions. Doc.89 at 6-7. That mess is the exact opposite of the "'administrative convenience and efficiency'" that associational standing is supposed to confer. *Free Speech Coal.*, 974 F.3d at 421.

Though a few courts have preliminarily allowed NetChoice to bring as-applied claims, their decisions are neither persuasive nor particularly on point. One of the cases that NetChoice likes to cite, *NetChoice v. Carr*, actually supports Tennessee. There the court held that associational standing was satisfied only "in the context of Plaintiff's facial challenge." 2025 WL 1768621, at *6 & n.7 (N.D. Ga. June 26). NetChoice's as-applied challenge was "infeasible," according to that court, because "[a]n as-applied challenge 'necessarily requires the development of a factual record for the court to consider,' which does not exist in the pre-enforcement context." *Id.* at *6 n.7, *7. The other two cases that

reached this issue don't move the needle. The Texas case involved a monitoring and filtering requirement that does not have an analog in Tennessee's law, which the court held "imposes relatively uniform requirements" in that case "across" social-media platforms. *CCIA*, 747 F. Supp. 3d at 1031. Both the Texas and Florida courts, moreover, concluded that the challenged laws were facially unconstitutional. *See id.* at 1030, 1038; *Uthmeier*, 2025 WL 1570007, at *15. And perhaps for that reason, neither court analyzed the plaintiffs' as-applied challenges with the rigor of the Third Circuit in *Free Speech Coalition*.

The question before this Court is not whether to grant a preliminary injunction, but whether to streamline this case by eliminating claims that NetChoice lacks standing to bring. Under well-settled principles of associational standing, this Court should dismiss NetChoice's complaint to the extent it brings as-applied claims. *See, e.g.*, *Dinkins*, 5 F.3d at 598; *Ass'n of Christian Schs.*, 678 F. Supp. 2d at 986.

## II. NetChoice's vagueness challenge fails to state a claim and is unripe.

NetChoice does not claim that the Act's coverage definition is vague as applied to any of its members. It challenges the Act only "as applied" to its members who "*are* covered." Doc.9 at 9 (emphasis added). NetChoice is not confused about whether the Act applies to its "covered members"—hence the word "covered." *E.g.*, Doc.9 at 3, 25; Doc.90 at 3. It concedes that the Act applies to "Tumblr," "Discord," "Dreamwidth," "Facebook," "Instagram," "Threads," "Nextdoor," "Pinterest," "Reddit," "Snapchat," "X," and "YouTube," Am.-Compl. ¶16, and it recently reiterated that "[t]here is no dispute that the Act regulates" those websites, Doc.90 at 2. It identifies no member that cannot tell whether the Act covers it. And in its amended complaint, it explicitly argues only that "a facial vagueness challenge is proper" and does not request any relief specific to its member companies. Am.-Compl. ¶78, ¶117. So even assuming NetChoice had standing to bring as-applied claims, any as-applied vagueness challenge would be forfeited, unsupported, and not well pleaded.

NetChoice's facial vagueness challenge fails on the merits. As explained, NetChoice concedes that the Act clearly covers at least twelve websites. Am.-Compl. ¶16. But a plaintiff who cannot bring an as-applied vagueness challenge because "the statutory terms are not vague as applied" to him, by definition, cannot bring a facial vagueness challenge. *Holder v. Humanitarian L. Proj.*, 561 U.S. 1 21 (2010); *Meriwether v. Hartop*, 992 F.3d 492, 517-18 (6th Cir. 2021). NetChoice has suggested that this rule doesn't apply when the law regulates speech, Doc.9 at 23-24, but the Supreme Court held otherwise in *Holder*, 561 U.S. at 21-24; *accord Lumumba v. Kiser*, 116 F.4th 269, 285 (4th Cir. 2024); *United States v. Pugh*, 90 F.4th 1318, 1333 (11th Cir. 2024); *Nat'l Org. for Marriage v. McKee*, 669 F.3d 34, 41-42 (1st Cir. 2012). Relatedly, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); *see also Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2014) ("A facial vagueness challenge will succeed only when the challenged law can never be validly applied."). NetChoice's vagueness claim fails both rules: Its members' websites clearly fall within the Act's scope, so they cannot bring a facial challenge; and because the Act's application to those websites is clear, the Act is not vague in all of its applications, making a facial challenge unavailable.

There is yet another justiciability problem with NetChoice's facial vagueness challenge: It is not "ripe," given that its arguments turn on hypothetical applications to hypothetical platforms before Tennessee's authorities have implemented the Act. *Carman v. Yellen*, 112 F.4th 386, 401-04 (6th Cir. 2024); *Holder*, 561 U.S. at 24-25. As in *Carman*, "there is considerable uncertainty over whether any of plaintiffs' alleged vagueness issues will come to pass," especially since they do not identify a platform for which there is any real ambiguity as to whether the Act's provisions apply to it. 112 F.4th at 402. This Court should likewise decline to "opine generally on [the Act's] constitutionality" in the absence of a non-hypothetical, actual scenario in which the Act's applicability to a website is unclear. *Id.*; *see*

12

*also Wash. State Grange*, 552 U.S. at 450 (declining to "go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases").

NetChoice's cursory vagueness arguments fail anyway. A law is facially vague only when it "'is utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct.'" *SisterSong v. Gov'r of Ga.*, 40 F.4th 1320, 1327 (11th Cir. 2022). "[P]erfect clarity and precise guidance have never been required," even for laws "that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). The law is full of "flexible" standards, *id.*, and "[c]lose cases can be imagined under virtually any statute," *United States v. Williams*, 553 U.S. 285, 306 (2008). Contrary to what NetChoice argued in its motion for a preliminary injunction, Doc.9 at 24, the Act is not vague because it fails to define common words like "primarily," "incidental," "predominantly," or "generally," *see Platt v. Bd. of Comm'rs*, 894 F.3d 235, 247 (6th Cir. 2018). Those words have a "fairly ascertainable meaning" and have been "upheld" by prior cases. *CCIA*, 747 F. Supp. 3d at 1039 & n.15.[*] They describe the main function or use of the website under consideration. *Id.* at 1039. "When a word is not defined by statute" courts are more than capable of "constru[ing] it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993).

"Context" also matters when assessing vagueness. *Holder*, 561 U.S. at 24. These words all modify the overarching term "social media platform," a term that's already "commonly understood." *Moody*, 144 S.Ct. at 2394-95. The sophisticated "business people" who must decide whether the Act

---

[*] *See, e.g.*, *CCIA*, 747 F. Supp. 3d at 1039 & n.15 ("primarily" and "incidental" not vague); *United States v. Gibson*, 998 F.3d 415, 419-20 (9th Cir. 2021) ("primarily used by children" not vague); *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 468-71 (S.D.N.Y. 1997) (Sotomayor, J.) ("primarily useful" not vague); *McGowan v. Maryland*, 366 U.S. 420, 428 (1961) ("incidental" not vague); *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 521 (1994) (collecting federal criminal statutes that say "primarily intended"); *Wiesenfelder v. Riley*, 959 F. Supp. 532, 535-37 (D.D.C. 1997) (applying a judge-made test that asked whether something was "predominantly internal"); *Ciba-Geigy Corp. v. EPA*, 874 F.2d 277, 280 (5th Cir. 1989) (applying a federal statute that used "generally").

covers a platform will know "either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation." *McGowan v. Maryland*, 366 U.S. 420, 428 (1961).

The Act's coverage definition is not vague as applied to the covered social-media platforms that it identifies in its complaint, so NetChoice cannot salvage its claim by "'complain[ing] of the vagueness of the law as applied to the conduct of others,'" even where that "conduct [is] in the form of speech." *Holder*, 561 U.S. at 20. NetChoice doesn't argue "arbitrary and discriminatory enforcement," *Meriwether*, 992 F.3d at 517-18, nor could it because enforcement turns on the platform's operations, not officials' "wholly subjective judgments," *Holder*, 561 U.S. at 20. Tellingly, NetChoice has "little (or no) actual confusion" about who is covered and not covered. *CCIA*, 747 F. Supp. 3d at 1040; *see* Am.-Compl. ¶16 (listing, as covered, twelve websites); Doc.9 at 21; Am.-Compl. ¶105, ¶111 (listing, as not covered, LinkedIn and Roblox). Any hypothetical difficulties with applying the Act's definition to other social-media platforms would not make the statute unconstitutionally vague. *Platt*, 894 F.3d at 251. Those issues can be addressed "on an as-applied basis" by individual websites if one who "does not know whether the law applies to them" ever emerges. *CCIA*, 747 F. Supp. 3d at 1040; *accord Holder*, 561 U.S. at 21-25; *Hill v. Colorado*, 530 U.S. 703, 733 (2000).

NetChoice's vagueness "argument is a stretch," *CCIA*, 747 F. Supp. 3d at 1039, which is why even some of the courts that ruled for NetChoice didn't endorse this argument. The few cases that did endorse it, *see* Doc.9 at 24, are distinguishable. Tennessee has "substantially more room for imprecision" than other States because its law lacks "criminal" penalties. *Meriwether*, 992 F.3d at 517-18 ; *see* T.C.A. §47-18-5705. Those other cases also had statutory terms not present here. For instance, *NetChoice v. Griffin* relied on testimony from a Snapchat executive who affirmed that he did not know whether the company was covered by a statute regulating platforms that exist "for the *primary purpose* of interacting socially," a phrase that does not appear in the Act. 2023 WL 5660155, at *14 (W.D. Ark. Aug. 31); *see also NetChoice v. Fitch*, 728 F. Supp. 3d 753, 778 (S.D. Miss. 2024) (concluding "it is unclear

14

what test one uses to determine how a digital service 'primarily' functions," a phrase that also does not appear in the Act), *vacated by* 134 F.4th 799 (5th Cir. 2025).

This Court should dismiss NetChoice's void-for-vagueness challenge (Count II).

## CONCLUSION

For all these reasons, this Court should dismiss NetChoice's as-applied challenges and its vagueness challenge.

Date: August 26, 2025 Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

| | /s/ *Cameron T. Norris* |
|---|---|
| Matthew D. Janssen, BPR No. 35451 | Thomas R. McCarthy* |
| Brian Phelps, BPR No. 40705 | Cameron T. Norris, BPR No. 33467 |
| Sr. Assistant Attorneys General/ | CONSOVOY MCCARTHY PLLC |
| Managing Attorneys | 1600 Wilson Blvd., Suite 700 |
| OFFICE OF THE ATTORNEY GENERAL | Arlington, VA 22209 |
| CONSUMER PROTECTION DIVISION | (703) 243-9423 |
| UBS Building, 20th Floor | cam@consovoymccarthy.com |
| 315 Deaderick Street | |
| Nashville, TN 37243 | Adam K. Mortara, BPR No. 40089 |
| (615) 741-1671 | LAWFAIR LLC |
| matthew.janssen@ag.tn.gov | 40 Burton Hills Blvd., Ste. 200 |
| brian.phelps@ag.tn.gov | Nashville, TN 37215 |
| | (773) 750-7154 |

*admitted pro hac vice*

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

On August 26, 2025, I e-filed this document with the Court, which automatically emailed everyone requiring notice.

/s/ *Cameron T. Norris*