IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NETCHOICE,<br><br>         *Plaintiff*,<br><br>v.<br><br>JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General & Reporter,<br><br>         *Defendant*. | Case No. 3:24-cv-1191<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Tennessee's opening motion explains why NetChoice lacks associational standing to bring as-applied free-speech claims, and why NetChoice's facial vagueness challenge is unripe and states no claim. In this short reply, *see* LR 7.01(a)(4), Tennessee focuses on a few points that emerge from NetChoice's opposition. NetChoice cannot bring a facial vagueness challenge because it identifies *zero* websites for which the Act is vague and offers *no* response to Tennessee's ripeness argument. And NetChoice's lack of standing to bring as-applied free-speech challenges is now clear, should be resolved before discovery, and was bolstered by the Ninth Circuit's recent decision in *NetChoice v. Bonta*.

## I. NetChoice's facial vagueness challenge fails to state a claim.

NetChoice now concedes that its vagueness challenge is solely a facial challenge. Opp. (Doc.95) 23 n.3. It also agrees that Tennessee's law is *not* vague with respect to any member that NetChoice claims has standing. *See* Opp.25 ("are covered"); Opp.14 ("twelve specific *regulated* members"). NetChoice claims that's not a problem because, in First Amendment cases, a law can be facially vague if it reaches "'a *substantial amount*'" of protected speech. Opp.24. Even if that were true, NetChoice violates the *separate* "rule" that "a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010); *accord Kutchinski ex rel. H.K. v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350, 360-61 (6th Cir. 2023). And it's not true: The Supreme Court held in *Holder* that, as a matter of law, "a Fifth Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." 561 U.S. at 20. Even if it did, NetChoice does not identify a *single* vague application of Tennessee's law. *See* Opp.25 (stating, in the most conclusory terms, that some unidentified "other members" "lack guidance"). If the Act's application is not vague for twelve of the biggest social-media websites—as NetChoice concedes—then it's not vague in a "'substantial'" number of applications. Opp.24.

NetChoice's vagueness claim also fails in its specifics. Terms like "primarily," "incidental," "predominantly," or "generally" have been upheld, and context makes their meaning clear. Mot.

(Doc.91) 13-14. NetChoice does not try to distinguish *CCIA v. Paxton*, which deemed its vagueness argument "a stretch" because these kinds of terms simply identify websites' "main function." 747 F. Supp. 3d 1011, 1039 (W.D. Tex. 2024). *Griffin* is also distinguishable because here, as in *Paxton*, there is "little (or no) actual confusion about whether Plaintiffs' members are covered." *Id.* at 1040. In *Griffin*, the court identified Snapchat, Nextdoor, and Pinterest as members that were not sure whether they were regulated. 2025 WL 978607, at *16 (W.D. Ark. Mar. 31). Yet NetChoice concedes that all three are clearly regulated by Tennessee's law "[b]ased on the Act's definitions." Am.-Compl. ¶16.

Finally, NetChoice *does not respond* to Tennessee's separate argument that NetChoice's facial vagueness claim is not ripe. Mot.12-13. This justiciability problem alone warrants dismissal. *See Dialysis Patient Citizens v. Azar*, 2021 WL 184318, at *6-7 (D.D.C. Jan. 19) (treating ripeness as "conceded" because plaintiffs failed to respond in their motion-to-dismiss opposition).

## II. NetChoice lacks associational standing for as-applied claims or relief.

At the start of its opposition, NetChoice seems to say it's *not* bringing as-applied claims. Citing *Doe v. Reed* and three other Supreme Court cases, NetChoice suggests that it challenges Tennessee's law only "to the extent it regulates 'social-media' websites." Opp.3. Fine, but as the Supreme Court explained in *Reed*, that kind of claim "must … satisfy our standards for a facial challenge." 561 U.S. 186, 194 (2010). Hence why NetChoice's example cases are all facial challenges. *See AFPF. v. Bonta*, 594 U.S. 595, 618 (2021); *Brown v. EMA*, 564 U.S. 786, 821 (2011) (Thomas, J., dissenting); *Sisters for Life v. Louisville-Jefferson County*, 56 F.4th 400, 407 (6th Cir. 2022) (explaining that *Packingham v. North Carolina* was a "facial" challenge). And here, Tennessee's law *only* covers social-media companies; so challenging its constitutionality "to the extent" it regulates social media is no different from challenging it facially. T.C.A. §47-18-5703. If NetChoice agrees that its as-applied claims "must … satisfy [the] standards for a facial challenge," *Reed*, 561 U.S. at 194, then Tennessee has no objection.

But Tennessee suspects that NetChoice doesn't agree. NetChoice's opposition goes on to defend its standing to bring as-applied claims. And it elsewhere challenges Tennessee's law "'to the extent'" it regulates NetChoice's "twelve covered member websites," which is not the same thing as challenging the law to the extent it regulates all social-media websites. Opp.6.

Addressing whether NetChoice satisfies the test for associational standing is not "'premature.'" *Cf.* Opp.15. Standing is "'the threshold question in every federal case,'" including the "prudential" question of whether "the plaintiff is the proper proponent of the rights on which the action is based." *Planned Parenthood Ass'n v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). And here, the answer affects a discovery dispute that's currently before the Court. *See* Mot.4. Those briefs, plus these briefs and the prior preliminary-injunction proceedings, are more than enough to conclude that NetChoice's as-applied claims "would necessitate significant individual participation." *Pa. Psychiatric Soc. v. Green Spring Health Servs.*, 280 F.3d 278, 286 (3d Cir. 2002). This case should not proceed to discovery before the parties know what claims NetChoice can bring. So this Court needs to decide whether NetChoice's as-applied claims and relief satisfy the test for associational standing.

NetChoice has associational standing only if "neither the claim asserted nor the relief requested requires the participation of individual members." *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Per the disjunctive "nor," NetChoice must prove that *both* its claim *and* relief require no individual participation. *See Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 985-86 (C.D. Cal. 2008); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). It cannot.

NetChoice now concedes that it seeks as-applied relief: a declaration that the Act is unconstitutional as applied to each of 12 websites, and an injunction barring the Act's enforcement against the 10 members that run those 12 websites. *See* Opp.14, Am.-Compl.33. After *Trump v. CASA*, this Court must award "party-specific" relief that is no "broader than necessary." 145 S.Ct. 2540, 2552, 2562-63 (2025). So if NetChoice fails to prove that Tennessee's law is unconstitutional as applied to a website,

3

that website must be *excluded* from this Court's as-applied relief. NetChoice's plan to prove that the Act is unconstitutional based on a "sampling of evidence" from only some websites is illegitimate. Opp.13. A law cannot be unconstitutional "as applied" to one plaintiff based on evidence that it would be "unconstitutional as applied to others." *Fleming v. USDA*, 713 F.2d 179, 188 (6th Cir. 1983); *accord NetChoice v. Bonta*, 2025 WL 2600007, at *6 (9th Cir. Sept. 9). NetChoice must make twelve "particular" as-applied showings. *Ross v. Duggan*, 402 F.3d 575, 582 n.3 (6th Cir. 2004). As-applied challenges thus differ from facial challenges, where the parties focus on *all* the Act's *theoretical* applications and then weigh the constitutional ones against the unconstitutional ones. *Moody v. NetChoice,* 603 U.S. 707, 724-26 (2024). Though the Supreme Court told NetChoice that facial challenges are hard, it did not "*encourag[e]* … NetChoice to bring as-applied claims." Opp.8. It told NetChoice that its *members* could bring as-applied claims. Mot.1-2; *accord Bonta*, 2025 WL 2600007, at *6 (holding that NetChoice could *not* bring the facial claim in *Moody* as an as-applied claim). NetChoice never denies that its well-resourced members are perfectly capable of bringing as-applied claims themselves. *See* Mot.2.

NetChoice's as-applied "claim" also requires its members' individual participation. *Hunt*, 432 U.S. at 343. Consider just a few of the individualized inquiries:

- NetChoice never denies that Tennessee's law regulates the creation of accounts, not access to websites. Mot.3. So whether (and to what degree) the Act restricts speech depends on what accountholders can see and do that nonaccountholders can't—a question that turns on nonpublic, algorithmic questions that vary for each website. Doc.89 at 4-5.

- NetChoice admits that its covered websites already take steps to block young children and let parents supervise accounts. Am.-Compl. ¶¶39-44. So whether (and to what degree) each portion of the Act injures websites or burdens users depends on website-specific evidence. Doc.89 at 5. In fact, NetChoice's opposition makes *zero* argument why it can challenge the parental-supervision portion of Tennessee's law "across the board."

- Though NetChoice distinguishes pornography cases by claiming that the speech on its members' websites is protected, Opp.20, pornography websites have protected speech too, *see Free Speech Coal. v. Paxton*, 145 S.Ct. 2291, 2300 (2025) (law applies if "one-third" of a website's content is obscene for minors); and NetChoice's members' websites are chock full of pornography and other unprotected speech that exploits children, Doc.28 ¶¶94-108. When conducting any kind of tailoring, Tennessee can argue that it has a greater

4

interest in regulating websites that have more of, or do less to police, this unprotected conduct. And that evidence will be website-specific: The number of children and predators on Snapchat is not the same as Nextdoor, the amount of pornography on X is not the same as Dreamwidth, and so on. Doc.86 at 7; Doc.89 at 5-6.

These questions *will* require testimony and discovery from each of NetChoice's members. Mot.10. Even if they required only NetChoice's biggest members to participate—like Meta, X, Google, and Snap—the number of individual documents and witnesses would easily be "'*excessive*.'" Opp.9. And their involvement would defeat the "'administrative convenience and efficiency'" that all agree the doctrine of associational standing requires. Opp.9.

The caselaw supporting NetChoice's approach is crumbling in real time. Though NetChoice discusses the two district courts that let it bring as-applied challenges, *see* Opp.12, it never denies that those cases were decided in a preliminary posture where the question didn't matter because the courts granted facial relief anyway, Mot.10-11. And as NetChoice eventually admits, the only two *appellate* courts to weigh in have rejected its position. The Third Circuit's detailed analysis in *Free Speech Coalition v. U.S. Attorney General* explains why a trade association cannot bring as-applied free-speech challenges to an age-verification law. 974 F.3d 408, 421 (3d Cir. 2020). NetChoice's factual distinctions between this case and that one are thin and, more importantly, have nothing to do with the Third Circuit's *legal reasoning*, which turned on the need for individualized proof on burden and tailoring. *See* Mot.11. Nor can NetChoice distinguish the Ninth Circuit's recent decision in *NetChoice v. Bonta*, where it was a party and made the same arguments about its supposed standing to bring as-applied claims. *See* Appellant-Br. (CA9-Doc. 13) 56, No. 25-146 (Jan. 30, 2025). No distinction between Tennessee's and California's law affects the Ninth Circuit's holding: NetChoice's members are "unique"; so "the participation of individual members" is needed "to adjudicate NetChoice's 'fact intensive'" as-applied "claims" and "the appropriate relief." 2025 WL 2600007, at *7.

\* \* \*

This Court should dismiss NetChoice's as-applied challenges and its vagueness challenge.

5

Date: September 16, 2025                    Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

|  |  |
|---|---|
|  | /s/ *Cameron T. Norris* |
| Matthew D. Janssen, BPR No. 35451 | Thomas R. McCarthy* |
| Brian Phelps, BPR No. 40705 | Cameron T. Norris, BPR No. 33467 |
| Sr. Assistant Attorneys General/ | Tiffany H. Bates** |
| Managing Attorneys | Nicholas B. Venable** |
| OFFICE OF THE ATTORNEY GENERAL | CONSOVOY MCCARTHY PLLC |
| CONSUMER PROTECTION DIVISION | 1600 Wilson Blvd., Suite 700 |
| UBS Building, 20th Floor | Arlington, VA 22209 |
| 315 Deaderick Street | (703) 243-9423 |
| Nashville, TN 37243 | cam@consovoymccarthy.com |
| (615) 741-1671 |  |
| matthew.janssen@ag.tn.gov | Adam K. Mortara, BPR No. 40089 |
| brian.phelps@ag.tn.gov | LAWFAIR LLC |
|  | 40 Burton Hills Blvd., Ste. 200 |
|  | Nashville, TN 37215 |
|  | (773) 750-7154 |

*admitted pro hac vice*
*\*\* pro hac vice pending*

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

On September 16, 2025, I e-filed this document with the Court, which automatically emailed everyone requiring notice.

/s/ *Cameron T. Norris*