IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NETCHOICE,<br>*Plaintiff*,<br>v.<br>JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General & Reporter,<br>*Defendant*. | Case No. 3:24-cv-1191<br><br>Judge Eli J. Richardson<br>Magistrate Judge Luke A. Evans |

## DEFENDANT'S UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR CERTIFICATION AND STAY OF DISCOVERY UNDER 28 U.S.C. §1292(B)

Defendant, Attorney General Jonathan Skrmetti, respectfully moves under 28 U.S.C. §1292(b) to certify an immediate appeal on the following question of law resolved in the Court's order dated October 27, 2026, and accompanying opinion (Docs.114, 115):

> Whether NetChoice satisfies the third requirement of associational standing—that neither the claim asserted nor the relief requested requires the participation of individual members—insofar as it brings as-applied claims on behalf of its members under the First Amendment.

Defendant further moves for a stay of discovery pending resolution of Defendant's certified appeal. Plaintiff, NetChoice, does not oppose either request.

Section 1292(b) lets courts hear immediate appeals when resolving a debatable question before final judgment would materially advance the ultimate termination of the litigation. NetChoice's standing to bring as-applied claims on behalf of its members is one such question. No controlling precedent in this circuit addresses when associations can bring as-applied First Amendment challenges, and out-of-circuit precedent generally requires parties to bring their own as-applied claims. Should the Sixth Circuit accept the appeal and rule that NetChoice lacks standing, the parties can avoid the expensive and complex discovery needed to fully air out NetChoice's as-applied claims on behalf of 13 disparate

websites. In short, this motion presents a textbook case where a certified appeal is warranted, particularly since NetChoice does not oppose the motion.

## BACKGROUND

In 2024, Tennessee enacted the Protecting Children from Social Media Act, which requires age verification, parental consent, and parental supervision for the creation of accounts on social-media websites. NetChoice, a trade association whose members run major online platforms, brings facial and as-applied challenges to the Act under the First Amendment. NetChoice has at least 40 members overall, including many companies that do not run social-media websites. Am.-Compl. (Doc.88) ¶13 & n.2. With respect to its as-applied claims, NetChoice alleges that the Act affects 12 websites owned by 10 of its members, and it seeks injunctive relief covering those 12 sites. ¶12, ¶76.

Defendant moved to dismiss NetChoice's as-applied claims for lack of standing. To assert associational standing, an organization must meet three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Defendant argued that NetChoice's as-applied First Amendment claims failed *Hunt*'s third requirement because both the claim asserted and the relief requested turn on facts specific to the member and website in question. MTD (Doc.91) 5-11.

This Court disagreed. The Court recognized that "federal courts frequently find that the third requirement to establish associational standing represents an insurmountable hurdle to an association asserting associational standing attempting to bring as-applied claims." MTD-Op.30. But the Court ruled that an "exceptio[n]" to the general rule applied here: Because the Act "imposes broad restrictions on threshold access to regulated websites," NetChoice's claims could "be proven without fact-intensive-individual inquiry." MTD-Op.28-29 (cleaned up). The Court thus held that NetChoice

had adequately pleaded associational standing. MTD-Op.29. The Court recognized, though, that any injunction will have to be limited to members that have "a valid as-applied claim." MTD-Op.32-33 n.31.

Following the Court's opinion, the parties reached an agreement on several issues governing future proceedings in this case. NetChoice identified the 13 member websites that it believes are covered by the Act—the 12 NetChoice listed in its complaint plus TikTok (operated by TikTok Inc. and TikTok USDS Joint Venture LLC). *See* Am.-Compl. ¶16. Defendant agreed not to enforce the Act against any of those websites pending the resolution of this case. In return, NetChoice agreed not to seek a preliminary injunction, not to oppose this §1292(b) motion, and to consent to a stay of discovery pending the final resolution of this motion and any appeal arising from it.

## ARGUMENT

This Court should grant Defendant's unopposed request to certify its proposed question on associational standing for immediate review. To save the parties from unnecessarily spending immense resources, the Court should also stay all discovery pending Defendant's proposed appeal.

### I. This Court should certify an interlocutory appeal.

An "interlocutory appeal is appropriate when 'a district judge … shall be of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Lofgren v. Polaris Indus. Inc.*, 526 F. Supp. 3d 322, 326 (M.D. Tenn. 2021) (Richardson, J.) (alterations in original; quoting 28 U.S.C. §1292(b)). These criteria let a district court certify an appeal whenever there is "good reason for avoiding the final judgment rule." Wright & Miller, *Federal Practice and Procedure* §3929 (3d ed., Apr. 2026 update). Though some cases "announce that §1292(b) is to be used sparingly, in exceptional cases," the "statute is not limited by its language to 'exceptional' cases," and "hundreds of appeals" have been decided under §1292(b). *Id.*

This Court's ruling on NetChoice's associational standing to raise as-applied claims satisfies all three of §1292(b)'s requirements and should be certified for interlocutory review. NetChoice's standing is a controlling question of law because an interlocutory reversal would lead to the dismissal of NetChoice's as-applied claims. There is substantial ground for disagreement because no controlling precedent determined this Court's ruling and reasonable jurists could have ruled differently. An immediate appeal could materially advance the litigation by eliminating NetChoice's as-applied claims and making unnecessary what will otherwise be enormously complex and costly discovery into 13 enormous, nonparty websites. And immediate review will not prejudice NetChoice, which does not oppose this motion.

**A. Controlling question of law**

This Court's ruling on NetChoice's associational standing to raise as-applied challenges "involves a 1) 'question of law' that is 2) 'controlling.'" *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting 28 U.S.C. §1292(b)).

First, "the sufficiency of a complaint is a question of law." *Id.* (cleaned up). This Court's "order holding that the allegations of the complaint stated a facially valid claim for" associational standing "falls comfortably within the category of an 'order [that] involves a … question of law.'" *Id.* (alterations in original; quoting 28 U.S.C. §1292(b)). In particular, whether and to what extent an association can raise as-applied First Amendment challenges on behalf of its members is a question about what the "legal test" for associational standing permits, making it a "purely legal" question. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge*, 583 U.S. 387, 393 (2018).

Second, this legal question is "controlling." 28 U.S.C. §1292(b). "The Sixth Circuit has set a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under §1292(b)." *Lofgren*, 526 F. Supp. 3d at 326 (cleaned up). "The resolution of an issue need not necessarily terminate an action or have precedential value." *In re Baker & Getty Fin. Servs.*,

954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (cleaned up). "Rather, all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.*; *accord Trump*, 874 F.3d at 951. Thus, "a question is controlling … if interlocutory reversal might save time for the district court, and time and expense for the litigants." Wright & Miller §3930.

Here, NetChoice's standing to raise as-applied claims is controlling because interlocutory reversal would lead to the dismissal of the as-applied claims. *See Hunt*, 432 U.S. at 343. In addition to outright eliminating some of NetChoice's claims, that dismissal would radically simplify the case by making unnecessary expensive and complex discovery into all 13 of the covered websites for which NetChoice seeks relief. *See infra* I.C.; *Lofgren*, 526 F. Supp. 3d at 330 ("The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law.").

**B. Substantial ground for difference of opinion**

A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Trump*, 874 F.3d at 952. Reasonable jurists might disagree when, for example, "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *Lofgren*, 526 F. Supp. 3d at 329 (quoting *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013)). A "novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id.* (quoting *Trump*, 874 F.3d at 952). And when "an initial question of jurisdiction" is at issue, "certification may be justified at a relatively low threshold of doubt." Wright & Miller §3930.

For two independent reasons, "there is substantial ground for difference of opinion" on whether NetChoice's as-applied challenge satisfies the third prong of associational standing. 28 U.S.C. §1292(b). Reasonable jurists could conclude that both NetChoice's "relief requested" and its "claim asserted" require the participation of individual members. *Hunt*, 432 U.S. at 343.

***Relief requested.*** Whether NetChoice's relief requires the participation of individual members is a difficult and novel question of great significance. NetChoice requests an injunction forbidding enforcement of the Act against 10 of its members. MTD-Op.33 n.31 (citing Am.-Compl. ¶16, ¶33). "[S]uch an injunction would be framed to enjoin enforcement of the Act … only as to the covered members … that both have standing on their own and likely would have a meritorious as-applied claim if they brought an independent claim." MTD-Op.33 n.31. Existing caselaw does not address whether an association can seek this kind of member-specific relief. And as this Court recognized, the "argument" that associational standing is not available for such relief is at least "compelling on first glance." MTD-Op.32 n.31.

Neither controlling nor persuasive precedent addresses the propriety of NetChoice's request for an injunction tailored to specific members. Associational standing caselaw generally assumes that the relief an association requests will be "shared by all [members] in equal degree." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). No Sixth Circuit precedent addresses the availability of member-specific injunctions. *See AAPS v. FDA*, 13 F.4th 531, 541 (6th Cir. 2021) (observing that existing "associational-standing cases have not squarely confronted" the question of an "injunction's proper scope"). The best citation available to the Court was a case generally addressing associations' ability to seek injunctive relief as opposed to damages. MTD-Op.32 n.31 (citing *Neighborhood Action Coal. v. Canton*, 882 F.2d 1012, 1017 (6th Cir. 1989)). The association there did not seek relief tailored to specific members. *See Neighborhood Action*, 882 F.2d at 1014 (seeking an injunction prohibiting the city "from providing services in a racially discriminatory manner," requiring it "to provide police protection" to a particular

neighborhood in an equal manner, and requiring it to revoke a particular store's "liquor license"). Since there is no "governing precedent in this circuit" on the propriety of member-specific injunctions, the question is "novel" under §1292(b). *Miedzianowski*, 735 F.3d at 384.

Nor does the out-of-circuit precedent on which the Court relied address the propriety of associational standing for the *relief requested*. *See Computer & Commc'ns Indus. Ass'n v. Uthmeier*, 826 F. Supp. 3d 1358, 1390 (N.D. Fla. 2025) (issuing universal injunction); *NetChoice v. Murrill*, 812 F. Supp. 3d 594, 629 (M.D. La. 2025) (addressing only whether the *claims asserted* required individual member participation); *Computer & Commc'ns Indus. Ass'n v. Paxton*, 747 F. Supp. 3d 1011, 1044 (W.D. Tex. 2024) (issuing injunction covering all of the plaintiff association's members). Thus, whether NetChoice can seek member-specific relief is "a question on which there is little precedent" and "whose correct resolution is not substantially guided by previous decisions." *Lofgren*, 526 F. Supp. 3d at 329.

The Sixth Circuit has recognized that the relief available in associational-standing cases is a difficult and open question requiring "a fresh look" in light of first principles of justiciability. *See AAPS*, 13 F.4th at 537. Associational standing "emerg[ed]" at the same time as "the 'universal' or 'nationwide' injunction." *Id.* at 541. When courts regularly issued universal injunctions, they did not have the same obligation to limit the scope of an injunction to particular members. *See id.* And so they did not have to confront whether defining an injunction's scope would require the participation of the individual members the association sought to cover. Now that the Supreme Court has put an end to universal injunctions, *Trump v. CASA*, 606 U.S. 831 (2025), courts must ask which members "would have standing in their own right" and have "a valid as-applied claim," MTD-Op.32-33 n.31. This doctrinal shift requires courts "to reassess" the proper domain of "associational standing along with" it. *AAPS*, 13 F.4th at 541. And the big-picture work of harmonizing the "associational-standing test with … more recent guidance" is an area where reasonable jurists can disagree, and where the authoritative guidance of appellate precedent is particularly needed. *Id.* at 538.

As this Court has already recognized, a reasonable jurist wading into these open doctrinal waters could find "compelling" the argument that "request[ing]" member-specific "injunctive relief based on [the association's] as-applied claims" fails "associational standing's third requirement." MTD-Op.32 n.31. "[S]tanding is not dispensed in gross"; instead "plaintiffs must demonstrate standing … for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). To the extent that an association seeks as-applied injunctive relief defined to cover specific members, it must show that each member to be covered "would have standing in [its] own right." MTD-Op.32 n.31. That showing necessarily requires evidence of injury specific to each member. *See Murthy*, 603 U.S. at 62-69. Since "both the fact and extent of injury would require individualized proof," reasonable jurists might conclude that an individual member "must be a party to the suit" if it wants as-applied injunctive relief. *Warth*, 422 U.S. at 515-16 (excluding associational standing for compensatory-damages claims on this basis).

***Claims asserted.*** Reasonable jurists might also conclude that NetChoice's claim asserted requires the participation of individual members. This Court has acknowledged that "federal courts often have found the third requirement for associational standing unsatisfied" for "as-applied claims," including "as-applied *First Amendment* claims." MTD-Op.25-26; *see also* MTD-Op.30 ("federal courts frequently find that the third requirement to establish associational standing represents an insurmountable hurdle to an association asserting associational standing attempting to bring as-applied claims"). The Court nonetheless determined that, at least at the pleading stage, this case is the "exception[al]" one where an association's as-applied claims "can be proven without fact-intensive-individual inquiry." MTD-Op.28-29 (cleaned up). But given the limited and arguably conflicting caselaw available to inform the Court's analysis, a reasonable jurist might have determined that as-applied First Amendment challenges are by definition fact-intensive, or at least that NetChoice's challenges fall within the general rule of being fact-intensive.

No binding precedent controlled this Court's analysis. The caselaw that the Court discussed on associational standing for as-applied First Amendment claims all came from outside the Sixth Circuit. *See* MTD-Op.26-38 (discussing caselaw from the Third, Fifth, Ninth, and Eleventh Circuits). Without "governing precedent in this circuit" on associational standing for as-applied First Amendment claims, the question before the Court was "novel" under §1292(b). *Miedzianowski*, 735 F.3d at 384.

The Court's decision also is at least arguably inconsistent with precedent from other circuits. *See Lofgren*, 526 F. Supp. 3d at 329 (recognizing that certification is appropriate when "the circuits are split on the question"). As the Court acknowledged, the Third Circuit and a court in the Ninth Circuit held that the need for individualized proof foreclosed as-applied First Amendment challenges by NetChoice and a similar trade association. MTD-Op.34-37; *see NetChoice v. Bonta*, 152 F.4th 1002, 1013-14 (9th Cir. 2025); *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408 (3d Cir. 2020). To be sure, this Court read these decisions narrowly, concluding they established only that the specific arguments raised by the challengers in those cases would have required a fact-intensive inquiry. MTD-Op.36-37. But it is also possible to read these decisions as holding more broadly that an "'as-applied attack' to a content-based restriction" *by definition* "require[s]" examining the "law's 'application to a particular person under particular circumstances.'" *Free Speech Coal.*, 974 F.3d at 422. And a reasonable jurist could find this broader reading persuasive. The first step of applying heightened scrutiny is identifying "the particular speech plaintiffs propose to undertake." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 36 (2010); *see also Fulton v. Philadelphia*, 593 U.S. 522, 541 (2021) (heightened scrutiny requires "scrutiniz[ing] the asserted harm of granting specific exemptions to particular … claimants"). Assessing NetChoice's as-applied claims thus at least arguably requires assessing facts specific to each affected member.

Even if some as-applied First Amendment challenges do not require individualized fact-finding, a reasonable jurist might conclude that NetChoice's do. The Court determined that the Act imposes "relatively uniform requirements on all of Plaintiff's covered members." MTD-Op.30 (cleaned up). But even if that is the case, a reasonable jurist might conclude that the application of First Amendment scrutiny to those requirements will vary based on the particulars of the member at issue. As NetChoice's complaint makes clear, the need for government intervention may differ from member to member, because different members have adopted different measures to block young children from making accounts and to promote parental oversight. *See* Am.-Compl. ¶¶31-45. The degree to which speech on covered websites is fully protected, as opposed to pornography that is obscene to minors or unprotected conduct like exploitation, will also vary from member to member. *See* MTD-Reply (Doc.98) 4-5. And the degree to which regulating the creation of accounts will hinder website visitors from accessing speech will also vary from website to website. *See* MTD-Reply.4. A reasonable jurist thus might conclude that the application of heightened scrutiny is "bound to be fact intensive" and "vary from function to function and platform to platform." *Moody v. NetChoice*, 603 U.S. 707, 747 (2024) (Barrett, J., concurring). If so, proceeding by association is not allowed under *Hunt*.

The addition of TikTok to the websites for which NetChoice intends to seek relief underscores the conclusion that the claims asserted risk overly individualized litigation. TikTok recently had—and at least arguably still has—a unique ownership structure allowing the Chinese government access to and control over its data, and its efforts to target American youth raise unique national security concerns. *See TikTok Inc. v. Garland*, 604 U.S. 56 (2025). These site-specific "complexities … may be relevant to the constitutional analysis." *Moody*, 603 U.S. at 746-47 (Barrett, J., concurring). Indeed, none of the cases finding associational standing for as-applied First Amendment claims specifically ad-

dressed TikTok. *See Murrill*, 812 F. Supp. 3d at 608. A reasonable jurist might therefore find this challenge to be particularly fact-specific, making NetChoice's associational standing suspect here even if it was not in some other cases.

**C. Materially advance ultimate termination of litigation**

Finally, interlocutory review is warranted because it "*may* materially advance the termination of the litigation." *Trump*, 874 F.3d at 952 (quoting 28 U.S.C. §1292(b)). An "interlocutory appeal materially advances litigation when it saves judicial resources and litigant expense." *Lofgren*, 526 F. Supp. 3d at 330. "Interlocutory appeal is most appropriate early in the proceedings. In contrast, the role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made." *Id.*

Here, should Defendant prevail on appeal, NetChoice's as-applied claims would be dismissed, leaving only its facial challenge. That result would radically simplify this case, saving the parties substantial time and money in discovery. And immediate review would not prejudice NetChoice, which does not oppose this motion.

Should NetChoice's as-applied claims proceed, Defendant expects that discovery will be enormously costly and complex. Defendant will need to develop its defense that the Act survives any heightened scrutiny that applies, which will involve weighing both the burden the Act imposes and the benefits it creates. *See* Disco.-Stmt. (Doc.89) 5. For each of the 13 websites for which NetChoice seeks relief, Defendant will need discovery on what tools that website currently has in place to protect children, how effective they are, what alternatives it considered and rejected, and how that website would comply with the Act. Disco.-Stmt.5. Defendant will also need discovery on the features of the websites that are designed to attract and addict children, the prevalence of child predators on each site, the amount of pornography on each site, and the other known harms that each website poses to children. Disco.-Stmt.5-6. At minimum, Defendant will need to take at least 13 Rule 30(b)(6)-style depositions—one for each website. And discovery will be even lengthier, costlier, and more complex

if NetChoice is correct that each of its covered members are to be treated as third parties whose depositions and documents can only be obtained by subpoena, requiring potentially more litigation against different lawyers in other courts. Disco.-Stmt.6-7; *see* Fed. R. Civ. P. 45.

An interlocutory appeal could allow the parties and the Court to avoid these costs. Should the Sixth Circuit rule that NetChoice has no standing to raise as-applied challenges, only NetChoice's facial challenge will remain, making detailed discovery into all 13 of its members' affected websites unnecessary. *See United States v. Hansen*, 599 U.S. 762, 769 (2023) (explaining that a First Amendment "facial challenge" does not turn on whether "the statute can be lawfully applied" to the challenger). At present, the case is at an early stage. Far from "nearing trial," the parties have not even "completed" any "discovery." *Lofgren*, 526 F. Supp. 3d at 330. A clean "initial question of jurisdiction" resolved on a motion to dismiss is an especially appropriate issue to certify. Wright & Miller §3930.

Nor would immediate review prejudice NetChoice, which does not oppose this motion. Immediate review would not expose its members to any additional risk of enforcement. Defendant has already agreed not to enforce the Act against the 13 websites NetChoice has identified pending the resolution of this case. And both parties have an interest in avoiding unnecessary discovery if it turns out that NetChoice lacks associational standing. There is no reason to deny Defendant's request for certification in the absence of any opposition by NetChoice.

## II. This Court should stay discovery.

In addition to certifying an immediate appeal, this Court should stay discovery until the Sixth Circuit either declines to take or finally resolves the interlocutory appeal. NetChoice consents to Defendant's request.

"Section 1292(b) permits, but does not require, the court to stay proceedings while a party seeks an interlocutory appeal." *Infinium Builders v. Nashville*, 2025 WL 2713748, at *3 (M.D. Tenn. Sept. 23). "The power to stay proceedings is incidental to the power inherent in every court to control the

disposition of the causes [on] its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014). "When considering whether to stay proceedings pending the resolution of an appeal, courts typically consider '(1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies.'" *Infinium Builders*, 2025 WL 2713748, at *3 (quoting *Baker v. Adams Cty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002)). As a state government, Defendant's interest and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

A stay of discovery is warranted under this standard. Because NetChoice's standing "is debatable amongst jurists of reason," the first "factor weighs in favor of staying proceedings pending the Sixth Circuit's decision on appeal." *Merritt-Ruth v. Latta*, 2015 WL 4756612, at *6 (E.D. Mich. Aug. 11); *see supra* I.B. Absent a stay, both parties will incur the "unrecoverable" costs of the very discovery that Defendant's proposed interlocutory appeal is intended to prevent. *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023); *see supra* I.C. NetChoice and its members, moreover, will suffer no prejudice from a stay of discovery. Defendant's agreement not to enforce the Act against the 13 websites that NetChoice has identified already adequately protects any legitimate First Amendment interests they might have. And NetChoice consents to a stay.

## CONCLUSION

This Court should certify the following question for immediate appeal: Whether NetChoice satisfies the third requirement of associational standing—that neither the claim asserted nor the relief requested requires the participation of individual members—insofar as it brings as-applied claims on behalf of its members under the First Amendment.

The Court should also stay all discovery until (1) Defendant fails to timely apply for an interlocutory appeal, (2) the Sixth Circuit denies Defendant's application, or (3) the interlocutory appeal is finally resolved.

Date: November 19, 2026

Respectfully submitted,


JONATHAN SKRMETTI
Attorney General and Reporter

Madeline W. Clark
Solicitor General

Matthew D. Janssen, BPR No. 35451
Brian Phelps, BPR No. 40705
Sr. Assistant Attorneys General/
Managing Attorneys
OFFICE OF THE ATTORNEY GENERAL
CONSUMER PROTECTION DIVISION
UBS Building, 20th Floor
315 Deaderick Street
Nashville, TN 37243
(615) 741-1671
matthew.janssen@ag.tn.gov
brian.phelps@ag.tn.gov

*/s/ Cameron T. Norris*
Thomas R. McCarthy*
Cameron T. Norris, BPR No. 33467
Nicholas B. Venable*
Ryan M. Proctor**
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

Adam K. Mortara, BPR No. 40089
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154

**admitted pro hac vice*
***pro hac vice forthcoming*

*Attorneys for Defendant*